### TARBELL v. FINNEGAN et al.

(Supreme Court, Appellate Division, Third Department. November 14, 1900.)

NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.
　　The issue being whether the contract of F. to assign to T. the contract of F. for purchase from H. of part of a farm, or, if T. preferred, to repay to T. the money he had loaned F. to pay on his contract with H., was a contract for an absolute assignment, as held by the court, or for an assignment as security till repayment of the money, as claimed by F., a new trial should not be granted on evidence that the receipt given by H. for payment with check of T., a day before the assignment, ran from H. to F., and that on the day of the assignment, when, with knowledge of F., a deed for the whole farm was given by H. to T., F., with the knowledge only of H.'s attorney, took the deed which had previously been prepared for F. for the part of the farm, and then stated that he supposed the deed was his; there being no probability that it would have changed the result.

Appeal from special term, Chenango county.

Action by Gage E. Tarbell against George P. Finnegan and others. From an order granting defendants' motion for a new trial on the ground of newly-discovered evidence, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Franklin Pierce, for appellant.
Wales & Riley (Frederick Collin, of counsel), for respondents.

MERWIN, J. The question whether the order appealed from was properly granted calls for some reference to the history of the case, and to the issues joined therein or litigated at the trial. In and prior to February, 1897, one Hill was the owner of a farm of about 170 acres in the town of Smithville. On the 17th day of February, 1897, Hill and the defendant George P. Finnegan entered into a written contract, in and by which Hill, in consideration of the sum of $3,500, agreed to sell to Finnegan 85 acres of the farm, being that part lying on the east side of the highway which ran through the premises. The consideration was to be paid as follows: $25 down; $175 on or before March 3, 1897; $200 on or before April 1, 1897; $100 on June 1, 1897; and the balance in annual payments of $200 each. A warranty deed was to be given on April 1, 1897, and a bond and mortgage back for the balance of the purchase money. Some furniture in the house on the premises was included in the sale, and was to be included in the mortgage. On the 25th February, 1897, Finnegan saw in New York City the plaintiff. They had been acquaintances for years, and were on friendly terms. On this occasion, for the purpose of making the payment to Hill which became due on or before March 3d, Finnegan obtained from plaintiff $200, giving back to plaintiff a writing stating that he would use the money to make such payment, and would, at any time before April 1st following, make an assignment to plaintiff of the contract with Hill, or, if the plaintiff preferred, would pay to plaintiff the $200 on April 1st. The writing also stated that he (Finnegan) would try to secure from Hill an option for the purchase of the remainder of the farm at a price not exceeding $2,500, and if he did so would assign the same to plaintiff, if he (the plaintiff) so desired. On the 27th February, Finnegan paid to Hill on the contract $175, and sent to the plaintiff the receipt given by Hill therefor. Finnegan also made effort to get the desired option from Hill for the balance of the farm, and on the 28th March sent to plaintiff a telegram stating that he could buy the property for $500 less than they talked about, by allowing a slight reservation, and asked plaintiff when he was coming up. To this plaintiff replied that he would be up Wednesday or Thursday. The latter day was April 1st. On that day plaintiff was at Smithville, and in the evening he went with Finnegan to the house of Hill. Two hundred dollars was then paid to Hill for the payment due on the contract on that date. The plaintiff furnished the money, and a receipt given therefor by Hill was delivered to the plaintiff. Hill, prepara-

tory to performance upon his part, had caused to be prepared and had executed a deed running to Finnegan. This deed Hill had with him on the evening the payment was made. It was not delivered. Finnegan had not executed the papers which were to be executed by him on receiving the deed. The purchase of the balance of the farm was discussed by the plaintiff and Hill, but no conclusion was reached. All parties agreed to meet the next day at Greene, where Mr. Chase, the attorney who drew for Hill and Finnegan the original contract and had prepared for Mr. Hill the deed and other papers, lived. On April 2d all parties were at Greene. Finnegan executed an assignment of all his interest in the contract to the plaintiff. This assignment was dated April 1, 1897, and was drawn by, and acknowledged before, Mr. Chase. The plaintiff made an arrangement with Hill for the purchase of the balance of the farm, and a new deed was prepared by Mr. Chase of the whole farm from Hill to the plaintiff. This was executed by Hill, and delivered to plaintiff, and the plaintiff paid Hill the balance of the price for the whole, less an outstanding mortgage. The deed from Hill to Finnegan was brought by Hill to Greene, and handed by him to Mr. Chase, and it was on the table in his office, with the other papers which Chase had previously drawn. On that day or the next Finnegan took possession of this deed. On the next day, April 3d, the plaintiff drew, executed, and delivered to Finnegan a lease of the 85 acres for the term of one year. Finnegan wanted a contract, but plaintiff declined to give it. On the following day Finnegan repudiated the lease, and claimed that he was entitled to have a contract, and declined to give up to plaintiff possession of that part of the farm. He had taken possession on or after April 1st. On the 5th April both deeds were recorded at the same hour. This action was commenced on May 13, 1897, to set aside, as void and a cloud on the title of plaintiff, the deed to Finnegan; also to rescind the lease, and have the possession of the premises restored to the plaintiff. The defendants answered, claiming that the writing of February 25, 1897, did not truly express the agreement then made; that the assignment therein referred to was only to be as security for the advances made or to be made by plaintiff, and that the writing should be reformed accordingly; that the assignment of April 1, 1897, was in substance only as such security; that plaintiff agreed to give Finnegan a contract, but refused to do so after he got title; that the defendant was entitled to hold possession under the contract with Hill, and upon the same terms, or have the right to a conveyance from plaintiff upon paying the amount he had advanced. The case was brought to trial in September, 1897. Upon the undisputed evidence, the deed from Hill to Finnegan was never delivered so as to become operative. The lease was repudiated, and specially renounced by Finnegan. That practically left the case with the defendants. The main issues presented by them were that the writing of February 25, 1897, did not correctly express the agreement, but should be reformed so as to provide that the assignment therein referred to was only as security, and that subsequently plaintiff

agreed to give to Finnegan a contract in case he received a deed of the whole. The decision of the trial court was adverse to the defendants. In the opinion which was delivered, and which, by the terms of the decision, expresses specifically the reasons for the decision, it is stated that the basic fact to be determined was whether the instrument of February 25th correctly stated the agreement. The conclusion was that it did, and that there was never any contract or definite understanding between plaintiff and Finnegan for the purchase by the latter of the 85 acres, and that upon that subject there was no contract such as Finnegan in equity would have a right to enforce. From the judgment entered in favor of the plaintiff the defendants appealed to the appellate division, where in November, 1898, the judgment was affirmed (54 N. Y. Supp. 1117). In January, 1899, the defendants appealed to the court of appeals, which appeal is still pending.

In June, 1899, at a criminal trial involving to some extent the same matters, the receipt given by Hill on the evening of April 1, 1897, was produced in evidence. The testimony of Mr. Chase was also taken in regard to the circumstances under which the deed from Hill to Finnegan had been taken by Finnegan from his office. This testimony differed in some respects from the testimony given by Chase on the same subject on the trial of this case. The receipt above referred to, and the later testimony of Mr. Chase, constitute the items of newly-discovered evidence upon which the motion for a new trial was based, and was granted in the order appealed from. The receipt is as follows:

"Greene, N. Y., April 1st, 1897.

"Received of G. P. Finnegan two hundred dollars, the amount due to-day upon a land contract made by said Finnegan and myself, dated February 17, 1897, to be indorsed to-morrow if check given by G. E. Tarbell is paid when presented at Juliand Bank, Greene.                    James Hill."

The defendants knew at the trial that a receipt was given, but no particular significance was given to it then, nor was any particular effort made to obtain it. Finnegan, in his affidavit on the motion, says that he did not know its contents until it was produced at the trial, in 1899. Hill was called by the defendants as a witness on the trial in this case, and testified that the plaintiff drew the receipt, and inserted in it by his (Hill's) direction the clause about the check not being credited till paid. He did not state to whom the receipt was delivered. From the papers now before us, it appears that Mr. Chase had previously drawn for Mr. Hill the receipt, all except the last clause. The receipt indicated that the money which the plaintiff advanced was received by Hill as a payment from Finnegan. Hill had no obligation against the plaintiff, and the plaintiff on that occasion did not, according to his own evidence, claim to Hill any interest in Finnegan's contract. He testified that it was understood between him and Finnegan that he should not then do so. The plaintiff then had no assignment, and the only party Hill could then recognize was Finnegan. The receipt, in form, was the appropriate one for Hill to give, and is entirely consistent with the attitude taken on that occasion by

plaintiff, according to his own testimony. It does not contradict or detract from his testimony. It does not throw any additional light upon any disputed fact. I fail, therefore, to see its materiality upon the motion for a new trial.

As to the testimony of Chase, it appears that on the trial in September, 1897, he was called as a witness for the plaintiff, and testified, among other things, that on Saturday, April 3d, Finnegan came into his office, and asked him if he could look at the papers which were left there the day before; that, upon being told that he could, he sat down at the desk where the bundle of papers was, being the deed from Hill to Finnegan and the unexecuted bond and mortgage and chattel mortgage, and looked over the papers; that there was some talk between him and Finnegan that he does not remember; that finally Finnegan got up, and went out, taking with him the bundle of papers; that he (witness) said nothing; that Finnegan did not ask him for the papers; that Finnegan might have said something with reference to the deed, and he will not say that Finnegan did not ask him about giving the deed. The witness had previously testified to drawing the assignment from Finnegan to the plaintiff on 2d April, and the deed from Hill to plaintiff, and that Finnegan was then present.

Finnegan testified upon this subject at that trial that upon Friday, April 2d, when he and plaintiff were in the office of Chase, he asked Chase to let him see the papers, and Chase handed them to him, and he looked over the chattel mortgage and the deed; that, while doing so, the plaintiff dictated to Chase the assignment, and he (Finnegan) signed it; that he put the deed in his pocket, thinking it belonged to him; that he had not executed any bond and mortgage or chattel mortgage; that afterwards, on the same day, he was present when the deed to plaintiff was being prepared, and knew that it covered the 85 acres; that he did not tell plaintiff that he had the deed; that he had no intention at that time to use the deed, and did not give it a thought. Chase in his testimony at the trial in June, 1899, testified that Finnegan got the deed on Friday, April 2d; that he came into his office when he was alone, saw the deed lying on the desk, took it, and put it in his pocket, saying only this: "I suppose this deed belongs to me. I think it is mine. I suppose this deed is mine." He also testified that this was in the forenoon, but from other portions of his evidence it is inferable that he did not get the deed back from Hill till after dinner, and that Finnegan was not at his office till after that, when he came with plaintiff.

The importance of this testimony, as defendants claim, consists in the fact that the date of the transaction is changed from the 3d to the 2d April, and in the statement made by Finnegan to Chase when he took the deed. Finnegan, in his evidence, did not mention this statement, nor does he in the affidavits made by him for this motion refer to such statement. Assume this statement was made, it still appears from the undisputed evidence that Finnegan appropriated the deed in the absence of Hill and of the plaintiff, and without any delivery from Hill, and without any ar-

rangement by Finnegan for adjusting the consideration, and that Finnegan, according to his own evidence, had just made an assignment to plaintiff of the contract, and knew that plaintiff was negotiating for the balance of the farm, and was also present when the deed of the whole was made to plaintiff, but made no suggestion that he had taken the prior deed. According to the first testimony of Chase, he was present when Finnegan took the deed away, and made no objection. So that, in connection with the conceded circumstances, it is difficult to see how, by the new version, Finnegan stands in any better position than he did before. The more important feature of the whole is that Finnegan afterwards put the deed on record, and claimed title under it. It seems to me to be very clear that the new evidence is not of such a character as would fairly authorize a trial court to reach a different result, assuming that the case as it now stands was properly decided. The new evidence does not, I think, materially change the case. It is hardly necessary to say that we cannot here review the original decision. That has already been done. It has been said in many cases that the new evidence must be of such a character that it would probably have changed the result. Glassford v. Lewis, 82 Hun, 46, 31 N. Y. Supp. 162, and cases cited. I do not see how we can fairly say in this case that the result would probably have been different had the new evidence been before the trial court. A broader rule is laid down in some of the cases (Vollkommer v. Railroad Co., 23 App. Div. 88, 48 N. Y. Supp. 372; Clark v. Railroad Co., 4 App. Div. 331, 38 N. Y. Supp. 563), but it is only on the basis that there is new material evidence that might fairly change the result. It will not do to say that the simple fact that a different result may be reached on a new trial is sufficient to authorize the order. That rule would reach most cases where questions of fact are sharply litigated. The different result must, at least, be such as would be fairly attributable to the new evidence. Giving the defendants the benefit of the broader rule, they fail, I think, to make a case for granting a new trial. The order should therefore be reversed, and motion denied.

Order reversed, with costs, and motion denied. All concur, except SMITH, J., not voting.